## ADAIR DRAINAGE DISTRICT v. QUINCY, OMAHA & KANSAS CITY RAILROAD COMPANY, Appellant.

Division One, December 20, 1919.

1. **SURFACE WATER:** Common Enemy. Surface water, including flood water from overflowing rivers and streams, is a common enemy, which all persons have a right to ward off, and against, which, railroads unless otherwise provided by statute, have a right to protect their right-of-way by building embankments thereon, even though thereby such surface and overflow water is backed up onto and injures the land or crops of others.

2. **OVERFLOW WATER:** Railroad Embankment: Section 3150. The statute (Sec. 3150, R. S. 1909) requiring a railroad company to construct suitable openings through its roadbed so as to afford sufficient outlet to drain and carry off surface water whenever the draining of such water has been obstructed by the construction of the railroad, does not apply when the effect of the embankment constructed by the railroad through a river bottom is to cause the surface water to flow towards the channel of the river and to keep it from flowing away from it.

3. ———: ———: Drainage Act. Section 26 of the Circuit Court Drainage District Act of 1913 does not give to the drainage district the right to compel a railroad company, at its own expense, to open a passage way through an embankment thrown up across the old bed of a lake or slough in the river bottom into which rain water from the surrounding lands drains and into which waters from the river overflow in times of flood.

4. ———: ———: ———: Bridges: Pleading: No Engineer's Plan. Whether Section 30 of the Circuit Court Drainage Act of 1913

applies at all to a mandamus suit to compel a railroad company to construct suitable openings through an embankment constructed through low lands in a river bottom, or whether it simply gives the drainage district a right of action for the costs of constructing a bridge or opening, it cannot be ruled in a mandamus suit wherein the alternative writ contains no allegation and there is no evidence that the chief engineer for the district had prepared a plan and specifications for such bridge or openings, that the railroad company must build such openings, because by said section bridges required to be constructed by the, act are to be built according to the plans, specifications and orders of the engineer for the district.

5. ———: Obstructions in River Channel: Mandamus. In mandamus relator must make out his case by clear and cogent proof, and the writ will not lie unless his right thereto is clear, plain and not doubtful, so where a drainage district, sues to compel a railroad company to remove obstructions in the channel of a river, and the evidence shows that at the time of the trial such obstructions had been substantially, though not entirely removed, and that they did not cause the water to materially, if at all, injure relator's drainage ditches, the peremptory writ will not go.

Appeal from Adair Circuit Court.—*Hon. Jas. A. Cooley,* Judge.

REVERSED.

*Campbell & Ellison* and *J. G. Trimble* for appellant.

(1) In the state of the pleadings at the time objection was made to introduction of testimony; and the motions to quash the writ were filed, they should have been sustained as there was no reply; to appellant's return. (2) If it were true that there was drift in the river which had injured relator's ditch, it has an adequate remedy at law and therefore mandamus will not lie. 2 Bailey on Hb. Corp. and Extraordinary Remedies (1913), p. 800; Bayard v. United States, 127 U. S. 246. Relator having an adequate remedy at law, even if it had been injured, cannot maintain mandamus. State ex rel. v. Gibson, 187 Mo. 553; State ex rel. v. Wurdeman, 187 S. W. 258; Caruth v. Richeson, 96 Mo. 186; People ex rel. v. Railway, 177 N. Y. 296. Appellant had a perfect right to take trestle bridges out of its railway and make its embankment one of solid earth. This

is directly decided in the Vanlandingham case, 206 S. W. 399. The case of Goll v. Railroad, 271 Mo. 655, is as much applicable to the present case as to the Vanlandingham case.

*Higbee & Mills* for respondent.

(1) This proceeding is authorized by Sec. 5513, R. S. 1909, as amended by Sections 26, 30 and 62, pp. 249, 250 and 266, Laws 1913. The plaintiff district is authorized to clean out, straighten, widen, change the course and flow of any volume of water, alter or deepen any ditch, etc., in or out of the district, concentrate, divert or divide the flow of water in or out of the district; to remove any fence, building or other improvements in or out of said district, "in order to effect the drainage and reclamation of the land" in the district. Plaintiff is entitled to invoke the said of the court to remove the obstructions to the flow of the surface water caused by the improvements; that is, filling the trestles with earth embankments. Pere Marquette Railroad Co. v. Weilnan, 122 N. W. (Mich.) 303; C. B. & Q. v. Board of Supervisors, 182 Fed. 291, 31 L. R. A. (N. S.) 1117; Drainage District v. Railroad Co., 99 Kan. 188; Riffe v. Ry. Co., 207 S. W. 78 (syl. 13) ; 26 Cyc. 296. (2) Respondent admits that it rebuilt its bridge over the river in 1910, and that a large amount of driftwood accumulated in the channel of the river north of the bridge, but claims it has removed the driftwood. Some of this driftwood is still in the channel of the river. The flow of water having been thus obstructed, the channel necessarily filled with sand which covered up timbers that remain in the bed of the river. This deposit in the bed of the river necessarily obstructs the flow of water and the ditch can cut no deeper than the river. The water in the river is lower south of the bridge than north of it. (3) The Drainage Act was enacted for the purpose of effecting the reclamation of swamp and overflowed lands, is highly salutary and remedial. It repeals the common-enemy doctrine of the common law respecting

surface water. The respondent has no right to con-
struct solid embankments over such lands to their in-
jury that is protected by the Federal Constitution, nor
does the Drainage Act deprive it of its property with-
out due process of law. Railroad v. Tranbarger, 35 S.
C. Rep. 678, affirming: Tranbarger v. Railroad, 250
Mo. 46.

SMALL, C.—This is a suit in mandamus to com-
pel the appellant to remove obstructions in the Chariton
River and to make openings in an embankment on its
right of way. The embankment is without openings
except a pipe three or four feet in diameter. The
embankment commences about two hundred feet west
of appellant's bridge over said river and extends
thence southwesterly about one-half mile. It consti-
tutes the south boundary line of the relator drainage
district, and was built across the bed of an old lake
or depression in the land, which was usually dry
except in times of heavy rains, and was from five
to ten feet lower than the bank of the river, for some
distance north and south of the embankment. The
drainage district extends north seven miles to the north
line of Adair County and embraces about seven thous-
and acres of swamp or overflow land. The Chariton
River runs in a tortuous and crooked course south
through the district. The main ditch of the drainage
district was built in 1911 and extends through the dis-
trict from north to south, emptying into the river
about four hundred feet north of appellant's bridge,
on the east side of the river, where it bends to the west.
This ditch was built across the land in the bends of
the river, and was about twenty-eight feet wide and
sixteen feet deep. The bottom of the river was general-
ly about twelve feet lower than the bottom of the ditch.
This plan of construction contemplated that when the
river arose to the bottom of the ditch the water would
flow through and wash and "scour" the ditch out and

thus ultimately widen and deepen it. There had not been sufficient water in the river to flow through the ditch to any appreciable extent until the spring and summer of 1915, and it had caved in and dirt had accumulated in it to some extent at that time.

The charge in the alternative writ, among other things, is that in 1910 the railroad company wrongfully and negligently caused and permitted large amounts of drift-wood and other material to obstruct the flow of said river, near its said bridge, and in 1912 it wrongfully erected on its right-of-way a solid embankment from fifteen to twenty feet high from a point about two hundred feet west of said bridge to a point about one-half mile west thereof, where its tracks had previously been on piles and trestles, and did not construct openings through said embankment to connect with the drain or lowland running south of said railroad, so as to afford an outlet to drain and carry off the surface water accumulating on the lands within said district; that by reason thereof the flow of said river during stages of high water and the surface water accumulating on the lands embraced within said district from drainage, rain-fall and overflowing of said river in the months of June and July, 1915, were so obstructed that the water backed up and was caused to overflow the lands embraced within the drainage district and destroyed the crops thereon, and the ditches of relator were partially filled with sediment and the flow of water therein obstructed and said ditches rendered useless.

The return put the matters charged in the alternative writ in issue. Any new matter in the return was denied by the reply.

The evidence, in the main, sustained the allegations of the relator, and showed damage to the crops on some of the lands within the district, from the overflow com-

plained of.  There was evidence that the river had been
obstructed a few years before by debris left in it when
appellant's bridge was constructed, but that such ob-
structions had been substantially, but not entirely, re-
moved.  But the evidence failed to show any substan-
tial damage to the ditch of the drainage district.  In
fact, one of the relator's witnesses testified that most
of the ditches he saw were scoured out by the flood and
were deeper and wider than they were before.  There
was no contradiction to this testimony.  The embank-
ment caused the water at times to be from sixteen to
twenty-two inches higher on the north side than it was
on the south side of the embankment, and to back the
water up on the land north of it, where it stood for
some days longer than it otherwise would have done.  It
also caused a current to run east along the embankment
nearly or quite to the bridge, where it turned south and
escaped with accelerated speed.

There was no allegation in the alternative writ and
no evidence of any plans or specifications for bridges
or other structures having been made by the drainage
district engineer, or any one, or of the size or character
of the openings through its embankment, which appel-
lant would be compelled to make to comply with the
peremptory writ.  To remove the embankment and
restore the trestle as it was before, the appellant's
engineers estimated would cost $18,000.  For this reason
the Kansas City Court of Appeals, to which the appeal
was taken, transferred the case to this court.

A plat showing the ditch, river, boundaries of the
district and railroad right of way was introduced by
relator.  The material part of it, showing the south two
miles or more of the ditch, is as follows:

Adair Drainage District v. O. K. Railroad Co.

After hearing the evidence the court granted the peremptory writ, which, following the alternative writ, commanded the appellant company to remove the obstructions in the river and "construct and maintain suitable openings" through said right-of-way and road-bed and ditches "along said railroad about one half mile westward from a point about two hundred feet west of said bridge over said Chariton River, to connect with drains and carry off the water, including surface water, that may accumulate on the land in said Adair Drainage District, so that such waters will not be obstructed in their flow, and that relator recover" costs, etc.

At the commencement of the trial, the appellant objected to the introduction of any evidence "for the reason that the alternative writ does not contain facts sufficient to constitute a cause of action against this respondent."

At the close of relator's testimony, the appellant moved "the court to quash the alternative writ of mandamus heretofore issued in this case and to dismiss this cause," which the court overruled, to which appellant excepted. This motion was renewed at the close of all the evidence, overruled and likewise excepted to.

I. Section 3150, Revised Statutes 1909, on which the proceeding seems to be based, at least in part, provides that it shall be the duty of every railroad com-

**Surface Water.** pany, within three months after the completion of its road, to cause to be constructed "suitable openings across and through the right of way and roadbed of such railroad . . . so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the drainage of such water has been obstructed or rendered necessary by the construction of such railroad; and in case such corporation . . . shall fail" so to do "within the time limited in this article, any person owning land adjoining such railroad where such ditches or drains are necessary is hereby authorized,

after giving thirty days' notice, in writing, to such owner or operator of said railroad, by service upon the nearest station agent or section foreman, to cause such ditches, drains, openings, culverts or trestles to be constructed and maintained, and such land owner may maintain an action against such corporation, company, or person so failing to construct and maintain such ditches or drains, in any court of competent jurisdiction, and shall be entitled to recover all costs, expenses and damages, incurred and accruing in the construction and maintainance of such ditches, drains, openings, culverts or trestles; . . . and any corporation, company or person failing to comply with the provisions of this section shall incur a penalty not to exceed two hundred dollars and be liable for all damages done by said neglect of duty, and each neglect of duty shall be a separate offense.''

Since this case was tried in the court below, Division Two of this court, in Goll v. Railroad, 271 Mo. 655, a case similar to the one at bar, in an opinion by Roy C., construed said section and thoroughly reviewed the decisions of this court as to surface water, and re-affirmed the doctrine that at common law, as declared to exist in this State, surface water, including flood water from overflowing rivers and streams, is a common enemy— an Ishmaelite whose hand is against every man and every man's hand is against it—and that a railroad company, except as otherwise provided by statute, has a right to make embankments on its right of way and thereby ward off surface water from its property, even though it is caused to back up and overflow and injure the lands and crops of others. In that case, the plaintiff owned a farm on the north side of the Missouri River, near Glasgow, and the defendant's railroad was located in the bottom on the south side of the river. As originally constructed, said railroad was partially on trestles, through which the water drained off to the south, but afterwards the trestles were filled up, without leaving any openings therein, and thereby the water

from the river, in times of flood, was obstructed and caused to back up to the north and overflow the plaintiff's lands. The court held that said Section 3150 did not apply and plaintiff, whose crops had been destroyed, had no cause of action. The court said, l. c. 668:

"It remains to be considered whether the defendant is liable under Section 3150 of our Revised Statutes. We will presume, without deciding, that a person owning land not adjoining defendant's right of way may sue under such section. However, we cannot overlook the fact that the river runs between the railroad and plaintiff's land. The section of the statute under consideration very clearly shows a purpose to get rid of the surface water and the water of streams which would be obstructed by the roadbed, and prevented from running into a watercourse. That section, in our judgment, cannot be construed to require that openings shall be made to let the water out of a river whose channel has not been obstructed. The whole purpose of our drainage laws seems to be to get the water into the rivers and to keep it there. We concede that the Legislature may provide that no person or railroad company may obstruct the overflow of streams, but it has not yet done so, at least in such a way as to affect this cause."

The same situation presents itself here. The south end of relator's ditch is on the east side of the river four hundred feet north of appellant's bridge and some three hundred feet east of appellant's embankment (the river itself being about one hundred feet wide). The embankment is on the west side of the river, and backed up the water northwardly towards the bend in the river, and also caused it to flow eastwardly along the embankment towards and into the river, at or near the bridge. So that, as in the Goll case, the effect of the embankment here was to cause the water to flow towards the channel of the river and to keep it from flowing away from it. And, as in that case, so in this, the property claimed to have been injured was on the

opposite side of the river from the embankment. Following, and on the authority of the Goll case, the Kansas City Court of Appeals, in an opinion by ELLISON, J., held that Vanlandingham, one of the relator's witnesses in this case, could recover nothing for the damage to his crops by reason of the embankment and overflow shown here. [Vanlandingham v. Railroad, 206 S. W. 399.]

We hold, therefore, that said Section 3150 does not authorize the judgment of the circuit court in this case.

II.    Indeed, learned counsel for relator in their brief expressly disclaim that this action is founded upon said Section 3150, but assert that it is a proceed-

Drainage Act.    ing "under the Drainage Act, to require the removal of the obstruction in the river and of the embankment that forms a dam over a natural drain that continues on south and connects with the river, through which the floods have always escaped to the river." It is not stated in the alternative writ, nor shown in the evidence, that this natural drain is anything more than the old bed of a lake or slough or lowland in the bottom west of the Chariton River, which drained the rain water which fell upon the land itself, or overflowed from the river when it was out of its banks. The fact that it drained off the flood water from the river, as well as rain water from the land, did not change its character as a surface water drain.

In the Goll case, supra, the court says (l. c. p. 668):

"In the absence of a good reason for a change, law, like water, should be kept as near as possible within its old and well defined channels, and we shall hold fast to our rule that *overflow water in Missouri is surface water.*"

In other words, this drain was not a water course, such as a creek or river, which at common law could not be obstructed, but was simply a *surface water* drain, which at common law, as construed and applied in this

State, could lawfully be obstructed by any landowner building an embankment upon his land. [Goll v. Railroad, supra.]

The sections of the Drainage Act relied upon by relator are Sections 26, 30 and 62, Laws 1913, page 249 et seq.

Said Section 26 empowers the drainage district "to clean out, straighten, widen, change the course and flow, alter or deepen any ditch, drain, river, . . . in or out of said district; . . . to concentrate, divert or divide the flow of water in or out of said districts; to construct and maintain main and lateral ditches, . . . and any other works and improvements deemed necessary to preserve and maintain the works in or out of said district; to construct or enlarge or cause to be constructed or enlarged any and all bridges that may be needed in or out of said district across any drain, ditch, . . . railroad right of way, tract, grade, fill or cut; . . . to construct any and all of said works and improvements . . . through or over any public highway, railroad right of way, track, grade, fill or cut in or out of said district; to remove any fence, building or other improvements in or out of said district, and shall have the right to hold, control and acquire by donation or purchase, and if need be, condemn any land, easement, railroad right of way, . . . in or out of said district for right of way, . . . or for any of the purposes herein provided, or for material to be used in constructing and maintaining said works . . . for draining, protecting and reclaiming the lands in said district. . . . Said board [of supervisors] shall also have the right to condemn for the use of the district, any land or property within or without said district not acquired or condemned by the court on the report of the commissioners assessing benefits and damages, and shall follow the procedure that is now provided by law for the appropriation of land or other property taken for telegraph, telephone and railroad rights of way."

Relator's contention that the above or any language in said Section 26 gives to the drainage district the right to compel the railroad company to open a passage way for water through the embankments on its right of way without its consent, and at its own expense, and without the district first having acquired by donation, purchase or condemnation, the right so to do, is wholly untenable. The plain provisions of said section above set forth clearly require the acquisition of such right by donation, purchase or condemnation.

Section 30 provides: "All bridges contemplated by this act and all enlargements of bridges already in existence shall be built and enlarged according to and in compliance with the plans, specifications and orders made or approved by the chief engineer of the district. If any such bridge . . . be needed over a . . . right of way of any corporation, the secretary of said board of supervisors shall give such corporation notice. . . . A failure to construct . . . such bridge within the time specified in such order" authorizes the district to construct the bridge at the expense of the railroad, "which costs shall be collected by said board of supervisors from said corporation, by suit therefor, if necessary."

Whether the above section applies at all to this case, or if it does, whether it authorizes mandamus to compel the railroad company to build the bridges, or limits the action against it to one for the expense of building the bridges after they have been constructed by the drainage district, are questions not necessary for us to decide, because there is no allegation in the alternative writ and no evidence that the chief engineer of the relator or any one ever prepared any plans or specifications for any such bridges, or for the openings in appellant's embankment commanded to be made by the writ in this case. No "bridges" other than such as are in accordance with such plans are required to be

paid for or built by the railroad company by said Section 30.

Section 62 simply, in general terms, retains all existing rights, liens, remedies, etc., given to drainage districts by the statute that are repealed by said act, in addition to those created by the act itself and provides that the act is remedial and shall be liberally construed.

So that, there is nothing in the Drainage Act to support the proceeding under review in this case.

III.   What has been said applies only to the obstruction caused by the embankment. There is also complaint by relator in the alternative writ of obstructions in the channel of the river itself. But the evidence shows that at the time of the trial such obstructions had been substantially, although not entirely, removed, and that they did not cause the water to materially, if at all, injure relator's ditches. In fact, according to the evidence of relator's witness who saw them before and after the flood of June and July, 1915, the ditches were thereby washed or "scoured out," so as to be wider and deeper than they were before, as was intended by their plan of construction. There is some evidence that the flow of water in the ditches may have been impeded to some extent, but, if so, this may have been, and probably was, caused by the embankment for which appellant is not liable, and not, to any appreciable extent, by the debris in the river, which relator's witness says had "practically" all been removed. The burden of proof requires the relator to make out its case by clear and cogent evidence. Mandamus is an extraordinary remedy, and will not lie unless relator's right thereto is clear, plain and not doubtful. [State ex rel. v. Gibson, 187 Mo. l. c. 553; State ex rel. v. McIntosh, 205 Mo. 610; State ex rel. v. Bridge Co., 206 Mo. 74; State ex rel. v. Hudson, 226 Mo. l. c. 255.]

*Obstructions in River.*

We are of opinion the lower court should have denied the peremptory writ. The case is therefore reversed.

*Brown* and *Ragland, CC.,* concur.

PER CURIAM:— The foregoing opinion of SMALL, C., is adopted as the opinion of the court. All of the judges concur.