JOHN C. FARRAR ET AL., APPELLANTS, v. ABSUSS SHUSS ET AL., RESPONDENTS.*

Kansas City Court of Appeals. April 5, 1926.

*Corpus Juris-Cyc References: Actions, 1CJ, p. 962, n. 84; Pleading, 31Cyc, p. 57, n. 37; p. 335, n. 80; Waters, 40Cyc, p. 642, n. 19; p. 643, n. 21; p. 645, n. 31; p. 647, n. 38; p. 653, n. 75.

*E. M. Harber* for appellant.

*R. E. Kavanaugh* and *A. G. Knight* for respondent.

BLAND, J.—This is an appeal from the action of the court in sustaining a demurrer to plaintiffs' petition. The first count of the petition alleges that plaintiffs, in June, 1923, were the owners and were in the possession of certain land in Grundy county devoted to farming and stock raising; that defendants— ·

". . . wholly disregarding plaintiffs' rights, and injury and damage they might and indeed have and will continue to suffer, until the reservoir or pool nuisance hereinafter complained of, is abated; about the —— day of June, A. D. 1923, erected, or caused to be erected, placed, made, created and erected upon" adjoining land owned by and in possession of them—

"A large reservoir or pool consisting of at least fifty acres, in which great amount of surface water was, and was by defendants intended and designed, collected; that said reservoir or pool was not, as was well known to the defendants, so constructed, had or maintained as to retain the water which was reasonably and necessarily anticipated and well known, would be collected therein.

"That said reservoir or pool, as well known to defendants, had no sufficient embankments or other protection to retain therein the water so collected and coming into the same, but by reason of the unlawful, willful and malicious acts of the defendants in so collecting said water into said reservoir or pool and failure to provide for the keeping and retaining thereof therein, said water coming and being collected in said reservoir or pool from time to time, and upon many and divers occasions, in fact continuously since the so constructing of said reservoir or pool, has in large quantities escaped therefrom and was discharged onto, upon and over" the said lands of plaintiffs, "rendering said land worthless for use of any kind during the years 1923 and 1924, it being of great value prior thereto, and in addition causing same to become marshy, sour and wet, infested with flies, mosquitoes, injuring and damaging plaintiffs' roads and fences thereon, to plaintiffs' actual damage at this time in the sum of fifteen hundred dollars ($1500).

"That said acts of the defendants have been and are in total disregard of the rights of the plaintiffs, and were and are willful, wrongful and malicious, and hence, plaintiffs should have and defendants should pay exemplary damages in the sum of at least fifteen hundred dollars ($1500).

"Plaintiffs further say that the acts and doings of the defendants as aforesaid, greatly impair the use and enjoyment of the plaintiffs, of their premises, aforesaid, and all their said premises, and to continue to maintain said reservoir or pool, aforesaid, with its resultant damage to plaintiff, would be a continued trespass and nuisance, an unlawful invasion and infringement of the use or enjoyment of the plaintiffs of their premises and to their irreparable injury and damage, and plaintiffs say they have no adequate remedy at law, and to avoid a multiplicity of suits, plaintiffs now pray judgment not only for said sum of fifteen hundred dollars ($1500) actual damages, and fifteen hundred dollars ($1500) exemplary damages as well, but that an injunction issue from this Honorable Court com-

manding and compelling the abatement of said reservoir or pool, and nuisance, as aforesaid, and the further so collection of water in said reservoir or pool, and permitting same to escape therefrom onto, upon and over said lands of plaintiffs, and the defendants, their agents, servants and employees be perpetually enjoined from so maintaining said reservoir or pool, the so collecting of water therein, permitting the same to escape and go over and upon the lands of the plaintiffs, and for such further relief, judgment and decrees as this Honorable Court may deem meet and proper, and for costs.''

The second count of the petition alleges the same facts as contained in count one except in addition to alleging that large quantities of water escaped from the reservoir or pool and were discharged onto, upon and over plaintiffs' lands, it alleges that such waters were ''backed upon,'' discharged onto, upon and over the lands of plaintiffs. The second count also contains the following allegations not found in the first:

''That for twenty years and longer prior to the —— day of June, 1923, a ditch and drain from defendants' said land through plaintiffs' said land had been constructed, had and maintained, carrying off such waters that come upon and flowed thereon. That in the constructing and making of said reservoir or pool, defendants wrongfully, maliciously and without lawful right, stopped and dammed up said ditch and drain diverting the waters therefrom and so collecting said waters in said reservoir or pool and this too well knowing said reservoir or pool, was not constructed with and had no sufficient embankments or other protection to retain therein, the waters so collected and coming into same.

''That in the construction of said reservoir or pool, defendants wrongfully and maliciously and without lawful right stopped up said ditch and drain, thereby diverting said water from said drain or ditch and so collecting said water in said reservoir or pool, causing same to overflow plaintiff's said lands.''

It will be seen that the allegations of the petition are most general in character. Fairly analyzed, the first count states that defendants had made or erected and maintained a large reservoir or pool in which a great amount of surface water was collected; that the pool did not retain the water that was collected therein by reason of insufficient embankments, if any. There is no allegation that the embankments were in any way defective and that the water escaped for this reason. It is not stated whether the land of plaintiffs was below that of defendants or above, whether they constituted the servient or dominant estate. It is not stated that more surface water flowed from the point where the pool was erected than had flowed there before. Although it alleges that surface water in large quantities was discharged upon plaintiffs' land it does not state that it was discharged in a

body or that the flow was increased by reason of the presence of the pool or embankment or that plaintiffs' land received any more surface water than it did before. There is no allegation that the waters were diverted from their natural course.

It is quite evident that it was intended to allege that the waters discharged upon plaintiffs' land were surface waters. It appears that water ran in the pool and thereupon ran out for lack of sufficient banks to hold it. As to surface water, the law is that such water is a common enemy which every proprietor may fight as he deems best, regardless of the effect upon other proprietors, except that one may not collect a quantity of water upon his premises by artificial means and discharge it in a flood upon his neighbor's land. [Reedy v. Brewing Association and City of St. Louis, 161 Mo. 523, 534, 535.]

"A landowner cannot collect surface water into a pond, pool, or ditch, and then discharge it upon the lands of another owner in a greater volume and more concentrated flow than would have resulted if the natural conditions had been left undisturbed." [40 Cyc., p. 647.] [Paddock v. Somes, 102 Mo. 226; Rycklicki v. City of St. Louis, 98 Mo. 497, 501, 502; Lewis v. City of Springfield, 142 Mo. App. 84; Grant v. Railroad, 149 Mo. App. 306; Frick v. Kansas City, 117 Mo. App. 488.]

"The general rule, however, is that either municipal corporations or private persons may so occupy and improve their land, and use it for such purposes as they may see fit, either by grading or filling up low places, or by erecting buildings thereon, or by making any other improvement thereon to make it fit for cultivation, or other profitable or desirable enjoyment; and it makes no difference that the effect of such improvement is to change the flow of the surface water accumulating or falling on the surrounding country, so as to either increase or diminish the quantity of such water, which had previously flowed upon the land of the adjoining proprietors, to their inconvenience or injury." [Abbot v. Ry. Co., 83 Mo. 271, 282, 283.]

In order to recover for the discharge of surface water, even from an artificial pond or lake, upon the land of another, some negligence must be shown. Merely causing surface water to flow upon the land of another in the same quantity and in the same place that it did before the water was interfered with, is not negligence as seen by the cases we have cited. And this is so even if the water is caused to be discharged thereon wilfully (intentionally), or maliciously. The motive is not important in the absence of a breach of duty. The allegation that it was "wrongfully" done is a mere conclusion of law and its truth is not admitted by demurrer. [Mallinckrodt Chemical Works v. Nemnich, 169 Mo. 388, 397.]

Plaintiffs cite the case of Murphy v. Gillum, 73 Mo. App. 387. This case involves the matter of seepage of water from a pond by reason of a faulty embankment. In the case at bar there is no

allegation that the water escaped by reason of a defective embankment or, in fact, any negligence in reference to the construction and maintenance of the reservoir or pool, except it is alleged that defendants knowingly and intentionally failed to provide sufficient embankments to retain the amount of water flowing into the pool. We think that the allegations of the first count are so indefinite as not to be traversable.

The second count of the petition relating to the existence of the drain mentioned therein, states no cause of action within itself. This part of the second count refers to the drain as having been constructed through the land of the parties twenty years prior to the time in question, the damming up of said ditch or drain, the collecting of its waters into said reservoir or pool and permitting them to escape therefrom and onto plaintiffs' land by reason of insufficient embankments. If it was the intention of plaintiffs to allege the existence of a prescriptive easement in the use of the ditch, it falls short of alleging sufficient facts to show such an easement. Under the facts alleged, the use and enjoyment of the right to the ditch may have amounted to nothing more than a revocable parol license. [Dunham v. Joyce, 129 Mo. 5, 13; 27 R. C. L., pp. 1162, 1163; 40 Cyc. 649, 650.]

However, we think that that part of the second count alleging the same facts as contained in the first count with the addition that waters in large quantities escaped from the reservoir or pool and *backed upon* and over plaintiffs' land, was sufficient to make out a cause of action in favor of plaintiffs. Defendants were liable for negligence either in the construction or subsequent maintenance of the reservoir or pool. [Murphy v. Gillum, supra, l. c. 492, 493.] A backing of the water upon plaintiffs' land was a diversion. The allegation that the waters were backed upon plaintiffs' lands shows that the waters were diverted from their natural course by reason of the construction and maintenance of the pool or reservoir in the condition in which it was alleged to be. Defendants had no right to back up water in large quantities upon plaintiffs' lands. Defendants had no right to dam up the water and throw it back in destructive quantities upon the upper estate. [Frick v. Kansas City, supra, l. c. 496; Lewis v. City of Springfield, supra; Grant v. Railroad, supra; Rychlicki v. City of St. Louis, supra.] The allegations of the second count of the petition were sufficient without stating that this was negligently done by the defendants. The averments of this count show that more than negligence was alleged, for, in effect, it alleges that the reservoir and embankments were maintained by the defendants, knowing that water in large quantities would be backed up thereby upon plaintiffs' lands. While the allegations of this count of the petition are very general and may be subject to a motion to make more definite and certain,

478

on general demurrer they are sufficient. [29 Cyc. 570, 571, 572; Dieter v. Zbaren, 81 Mo. App. 612.]

It is a rule that the owner of the servient estate may prevent by obstructions surface water from coming upon it and in this manner throw water back upon the dominant estate without incurring any liability to the owner of the latter. [Johnson v. Leazenby, 202 Mo. App. 232; Goll v. Railroad, 271 Mo. 655, 656; Adair Drainage District v. Railroad, 280 Mo. 244.] The allegations of the petition we think show that this is not that kind of a case for it alleges that the water was collected into a pool or reservoir on defendants' land. This is inconsistent with the idea of warding off water coming onto defendants' land.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.