MARION A. HUTCHINGS, APPELLANT, v. WABASH RAILWAY COMPANY, RESPONDENT.

Kansas City Court of Appeals. December 1, 1930.

*Alan F. Wherritt* and *Crowley & Farris* for appellant.

*Homer Hall* and *Moore & Moore* for respondent.

BLAND, J.—This is a suit for damages for permanent injury to plaintiff's real estate, the flooding of his land and loss, by drowning, of his hogs and chickens. At the close of plaintiff's case the court indicated that it would sustain defendant's demurrer to the evidence and plaintiff took an involuntary nonsuit. Thereafter plaintiff filed

a motion to set aside the nonsuit, which the court overruled. Plaintiff has appealed.

The facts show that, prior to and at the time of the occurrences out of which this suit arose, plaintiff was the owner and operator of a farm of sixty-five acres in Clay county and had been so engaged for a number of years and that defendant was the owner and operator of a railroad running in a southerly direction from Excelsior Springs to Excelsior Springs Junction in said county where it connected with its main line. The farm of plaintiff is located on the east side of defendant's right-of-way, adjoining the same, and lies south and east of Fishing River. The river is spanned by defendant's railroad bridge. About 150 feet west of the railroad bridge is a wagon road bridge. Between the two bridges the river runs west and east, the current of the river being toward the east. East of the railroad bridge the river ran in a direction somewhat northeast. Going up the river west of the wagon bridge the river went for a short distance west and beyond that in a northwesterly direction for a distance of 500 feet. The railroad at and near the point where it crosses the river runs through a low, flat country, there being a slight fall of the land toward the southeast on the west side of the railroad right-of-way and toward the east on the east side.

Prior to 1924 there was about 217 feet of trestle work between the railroad bridge and the solid ground to the north. When the water was high the river would overflow its banks north of the wagon bridge. The overflow would then come across the highway and these waters, together with other surface waters flowing over the land, then went through the trestle work and thence in a direction slightly north of east where it finally found its way back into the river. In August of 1924, defendant filled in 117 feet of this trestle work with earth, starting from the solid ground to the north and running south, leaving a space of about 100 feet of trestle work between the end of the embankment and the beginning of the bridge. From the north bank of the river to the end of the embankment it is now 140 or 150 feet. When the trestle work was filled in by the defendant other trestle work was placed south of the iron bridge so that after the improvement was finished there remained an open space of about 200 feet of bridge and trestle work for water to flow under the railroad.

The building of the embankment in question caused the water that had theretofore come through the trestle work, to strike the embankment which forced the water to the south toward the river at the railroad bridge. These waters soon began to wash away the south end of the embankment and, in the spring of 1925, defendant caused two car loads of rock to be dumped at the south end of the embankment on the west side thereof. Thereafter there was no further washing

of the embankment. However, the embankment, including the rock revetment, caused the water flowing against the embankment to run into the river at the bridge in a southeasterly direction, striking the current of the river in a similar direction with great force and causing a whirlpool to form and pass under the bridge in the same direction. This action of the water caused the bank of the river to be cut away across the right-of-way of defendant, on the east side of the railroad and the south side of the river, and the land of the plaintiff joining the right-of-way on the east. At the time of the trial plaintiff had lost three acres of his land. At one place sixty-two feet of his land has been washed away and, on account of the tendency of the river to go in a southeasterly direction, it continues to erode his land.

The evidence shows that the channel of the river was and is in no wise obstructed but at times of high water the opening is not large enough to permit a free flow through it of the water. The water backs up west of the opening so that it covers about six acres and the water on that side of the opening is three or four feet higher than on the east side. Prior to the building of the embankment but little water collected west of the opening. Now the pressure of the water, together with the presence of a fall under the bridge of two feet to the east, results in a strong current of water running against plaintiff's land. On account of the water going under the bridge in a southeasterly direction there is a tendency for it to fill in the north bank of the river and to cut out the south bank so that at the time of the trial the channel of the river under the bridge was forty-five feet further south than it was before the embankment was built.

Negligence is charged in the petition in that the building of the embankment caused a large body of water, "principally from the flow of Fishing River," in wet and rainy times to be collected by the embankment and thereby caused to be confined into one body, pool or pond and to be precipitated in a single "raging and rushing" stream in a southeasterly direction against the channel of Fishing River, forcing the channel of the river to the south and east away from its original bed and on to the land of plaintiff.

It is urged that plaintiff made a case under the facts; that these facts show that defendant collected, by building the embankment, the overflow waters from Fishing River, and the other surface water falling west of its right-of-way, into a pool, causing such waters to be discharged in a current against the natural current of the river so that the channel of the river was diverted south of its original location and caused to cut away and destroy plaintiff's land and personal property. In support of this contention plaintiff relies largely upon cases holding, in effect, that a landowner cannot collect surface water into a pond, pool or ditch and then discharge it

upon the lands of another owner in a greater volume and more concentrated flow than would have resulted if the natural conditions had been left undisturbed. [See Ready v. Brewing Association, 161 Mo. 523.]

These cases shed no light on the situation in the case at bar. Defendant did not collect surface waters into a pond, pool or ditch and then discharge them upon the land of plaintiff. In the first place there was no collection whatever of surface waters. Those waters which flowed towards plaintiff's right-of-way were merely warded off of the right-of-way by the building of the embankment. Of course, as a natural result of the surrounding conditions, including the slope of the land, these waters were caused by the embankment to flow into the river near the south end of the embankment and the railroad bridge. Instead of defendant collecting the waters into a pond, pool or ditch, and then causing them to be discharged on the land of the plaintiff, the waters were not collected at all but, as a result of the effort of defendant to get the waters off of its land, they were caused to flow into a running stream. There is no question but that defendant was within its right in the action it took to protect its right-of-way. [Goll v. R. R., 271 Mo. 655; Van Landingham v. Quincy, O. & K. C. Ry. Co., 206 S. W. 399; Adair Drainage District v. Quincy, O. & K. C. Ry. Co., 280 Mo. 244; Anderson v. Inter-River Drainage & Levee District, 274 S. W. 449; Gray v. Schriber, 58 Mo. App. 173.]

However, plaintiff attempts to distinguish the Goll, and other cases that we have cited, from the case at bar, in that in those cases, there was no interference with the channel of the river, whereas, plaintiff claims in his case, the acts of the defendant did change the channel of Fishing River. As before stated, defendant was within its right in building the embankment in order to ward off the surface waters from its right-of-way so that such waters were forced back into the channel of the river. While it is true that as a result of this act the course of the channel of the river was changed, to plaintiff's injury, there was no direct interference by defendant of the channel of the river. The fact that the channel of the river was diverted by these waters was a mere incidental result of the act of the defendant and plaintiff is not entitled to recover for this. [See cases last cited and 40 Cyc., p. 648.] There is no evidence that the embankment was not a proper structure or that defendant was in the least bit negligent in the construction or the maintenance of its railroad property. There was no interference by the defendant with the channel of the stream (except, perhaps, incidentally) and no evidence of the construction of the embankment for the purpose of injuring plaintiff. All that defendant did was to erect the embankment in the usual way, protecting it by a rock revetment. As be-

fore stated, it was within its right in so doing. Any damage that may have resulted to plaintiff must necessarily come within the classification of *"damnum absque injuria."*

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.