STATE EX REL. ADA BELLE ONION, RELATOR, v. THE SUPREME TEMPLE, PYTHIAN SISTERS, ET AL., RESPONDENTS.—54 S. W. (2d) 468.

Kansas City Court of Appeals. November 21, 1932.

*McClintock, Quant & Ferguson* for relator.

*James A. Reed, Burr S. Stottle* and *Alfred A. Benesch* for respondents.

TRIMBLE, P. J.—This is an action wherein relator sued out an alternative writ of mandamus to compel respondents to reinstate relator as a member of the order known as ''The Supreme Temple Pythian Sisters,'' a corporation, operated as a lodge and fraternal, charitable organization. Said order at the time of the application for, and the issuance of, the alternative writ, was in its annual session in Kansas City. The prayer of the petition for the writ was also to set aside

the order by which relator was suspended from membership on or about April 25, 1931, and all proceedings in connection therewith and upon which the order of suspension was founded, so that relator might lawfully proceed with her claimed duties and secure and be entitled to her privileges, rights, compensation and benefits as a member of said order. It is alleged that under its laws adopted for the government of its members and subordinate bodies, there exist and are chartered by it, subordinate bodies named Grand Temples being governed by it which are situated and domiciled in the various states and territories of the United States and the Provinces of Canada; that under the laws of the respective Grand Temples, and governed by them and subject to the government and jurisdiction of the Supreme Temple Pythian Sisters, there are situated in towns and cities throughout such territorial limits, local organizations known as Subordinate Temples; that Elsie E. Vandervort is the Supreme Chief of the Supreme Temple Pythian Sisters, Mollie V. Keller its Supreme Mistress of Records and Correspondence, and Belle Quinlan, Addie Kemp and Elizabeth Hutchinson, its Committee on Judiciary; and that said parties, between the holding of the Biennial Session of said Supreme Temple Pythian Sisters last held at Tampa, Florida, ending August 17, 1930, are its executive heads and, in the matters hereinafter set forth, acted upon their own authority.

The petition or application then alleged that relator now is, except as hereinafter stated, and was, at all times hereinafter mentioned, a member in good standing of Friendship Temple No. 2, of San Antonio, Texas, Order of Pythian Sisters, and a member of the Grand Temple of the State of Texas, and a Past Supreme Chief of the Supreme Temple Pythian Sisters; and as a member of said order, is entitled to all of its benefits and privileges, and on and since April 25, 1931, has been, and is, ready, able and willing to enjoy and exercise the same.

That under the Supreme Constitution and statutes adopted by the Supreme Temple of Pythian Sisters, at all times hereinafter stated, and still in full force and effect, relator as such Past Supreme Chief, is entitled to and allowed a vote in all the sessions of the Supreme Temple, and the usual and customary mileage and *per diem* for attendance thereon, aggregating for the Session now in Kansas City, Missouri, the sum of $200; that, according the practice and custom of said order, which is now, and for many years last past, has been in full force and effect, relator is entitled to receive from Friendship Temple No. 2 at San Antonio, Texas, funeral benefits in case of her death in the sum of $100, and is also, in case of illness, upon her application, entitled to receive from such local Temple the reasonable sick benefits, when needed, aggregating $3 per week during sickness.

It is further alleged that relator was elected Supreme Chief of the Supreme Temple Pythian Sisters at the biennial session of August, 1926, and her term of office as such expired at the expiration of the Biennial Session of Supreme Temple Pythian Sisters ending August 18, 1928; that since that time relator has not been an officer of said Supreme Temple Pythian Sisters, and was not on April 25, 1931, having theretofore received the honors of Past Supreme Chief, as by its laws provided, whereupon she became, and was, on April 25, 1931, and is now, entitled to attend and participate thereafter in all functions of the Supreme Temple Pythian Sisters as a member thereof, but since April 25, 1931, she has been unlawfully prevented from doing so by the respondents.

The petition then set forth certain sections of the Supreme Constitution and Statutes, Order of Pythian Sisters, constituting the Code of Procedure for trials and appeals for all members, being such sections as relator deemed pertinent and bearing on what was considered necessary to set forth to entitle her to the issuance of the peremptory writ. Not all of the sections contained and in force in said Constitution and Statutes and bearing upon the matter in question were set forth, but, by agreement of counsel on both sides, the Revised Edition, 1928, of the "Supreme Constitution and Statutes Pythian Sisters, Grand and Subordinate Constitutions, as adopted by Supreme Temple" was filed in the case, at the argument of the demurrer filed by respondents for the use of the court in consulting any Constitutional Section or Statute deemed material on the questions involved. (It is unnecessary to set these forth as they are long and numerous and would swell this opinion to unwarrantable length.)

The petition or application of relator for the writ then alleged that—

"on April 25, 1931, respondents, in direct violation of above Constitution and Statutes, without preferring charges against relator, and without affording to relator any opportunity to appear and answer to any charges or to make any defense in her own behalf, caused to be entered an order and decree suspending her from the 'Order of Pythian Sisters and terminating her membership therein, which order and decree respondents, under color of their said official positions, still continue in effect; that relator now is, and has been, thereby unlawfully deprived of her aforesaid rights and privileges as a member of the Order of Pythian Sisters by said respondents and unlawfully prevented by respondents from exercising her rights and privileges to attend and participate in the Biennial Session of the Supreme Temple Pythian Sisters, now convened at Kansas City, Jackson County, Missouri, and to receive the mileage and *per diem* aforesaid therefor and the other benefits hereinbefore set forth; and, for which

your relator has no remedy in said order, and said order of March 25, 1931, has been referred to the said Judiciary Committee, which has affirmed such order, and the affirmance thereof approved by respondents.''

It is well settled that to justify or warrant the issuance of the peremptory writ of mandamus ''there must be an existing, clear, unconditional, legal right in relator and a corresponding present, imperative, unconditional duty upon the part of respondents, and a default by respondents therein.'' [State ex rel. v. Missouri, etc., Ry. Co., et al., 280 Mo. 456, l. c. 463-4.] The peremptory writ cannot order something to be done that is broader than the petition or proof warrants, no element of the right to amend the petition being involved. [State ex rel. v. Hudson, 226 Mo. 229.] Mandamus is a legal, and not an equitable, remedy of necessity, it is a stern, harsh writ, and, when issued, is an unreasoning, inflexible, peremptory command to do a particular thing therein specified without condition, limitation or terms of any kind. [State ex rel. v. Bank of Conception, 174 Mo. App. 589, 593.]

Without going into the question of whether relator has such a proprietary interest involved in the membership of a voluntary association as this is, as to authorize the use of the peremptory writ of mandamus in her favor (State ex rel. v. Jackson County Medical Society, 295 Mo. 144), it is indisputable that in such bodies, the members are subject to the reasonable rules of the organization as to tenure of membership so that even if mandamus to compel reinstatement may lie in proper circumstances, yet it will not do so in favor of a member who has not pursued, or exhausted his remedies by appeal, provided by the rules of the society. [State ex rel. v. Tower Grove Turn Verein, 206 S. W. 242.] Furthermore, a prior express and specific demand by relator of what he seeks, and a refusal thereof by respondents, are indispensable to the granting of the writ. [State ex rel. v. The Associated Press, 159 Mo. 410.]

A relator must not only have a clear right to the performance of the act sought to be coerced by the mandate of the court, but he must *allege* and *prove* he has a clear, unequivocal, specific right to the thing claimed. A mere general allegation that relator is entitled to a certain right and that respondents have deprived him of it is not sufficient. The *facts* must be stated. [State ex rel. v. Newberg Special Road District, 217 S. W. 605, 606.] And it follows from the very nature of the remedy by mandamus and the principles governing it, that it must appear from the petition that respondents have the power to reinstate relator or to grant the relief prayed for.

Applying these principles, or at least some of them, we find from an examination of the Constitution and Statutes of the Order that

they provide a method of procedure for reinstatement which relator has not seen fit to follow, such as an appeal. Nor did she give heed to the notice given her when charges were made, but on the contrary refused to appear on the ground that the corporate body and the officers in charge of the matter were prejudiced against her and that "justice can only be obtained through the courts." It is not for relator to thus prophesy and foresee what *would be* meted out to her on an *appeal* and, on this, fly to the court for the extraordinary remedy of mandamus. Again, the charge that "she has been unlawfully prevented from attending and participating in all functions of the Supreme Temple Pythian Sisters as a member thereof" is but a mere conclusion of law and does not set forth any facts sufficient to show that she has been deprived of any rights, nor does it set forth the alleged order of suspension. Nor does the petition show that she has ever made any demand for reinstatement, or to have the order of suspension set aside, nor that she be reinstated in said order, nor that she has made any effort to exercise any of her said rights and been denied them. In addition to all this, it nowhere appears from the facts stated in the petition that if the peremptory writ were to issue, respondents would have any power or authority to reinstate her; but that power would, in part at least, rest with the members of each local organization voting thereat in such matter. And finally, the petition does not allege that an appeal has been refused her, nor ask that one be granted her, but that, without regard to the question of her guilt or innocence of the charge of mismanagement and other wrongful conduct, she be *reinstated*.

From this and perhaps other matters which seem to be lacking in the petition but which need not be specifically mentioned, relator is not entitled to have the peremptory writ to issue or the alternative writ to be further maintained.

Wherefore the demurrer and motion to quash are sustained, the peremptory writ is denied and the alternative writ quashed. It is so ordered. All concur.