THE STATE OF MISSOURI, ex rel. JOHN PHILLIP, ET AL., Employees of the Board of Education of the City of St. Louis, Missouri, ET AL., Relators, v. THE PUBLIC SCHOOL RETIREMENT SYSTEM OF THE CITY OF ST. LOUIS, MISSOURI, a Corporation, and JOHN A. BRENNAN, ET AL., Trustees of the Public School Retirement System of the City of St. Louis, Missouri, Respondents, No. 44038—262 S. W. (2d) 569.

Court en Banc, November 16, 1953.

*Francis M. O'Brien, Stanley R. Schuchat* and *Floyd D. Stewart* for relators.

*Jacob M. Lashly, John H. Lashly* and *Lashly, Lashly & Miller* for respondents; *Maurice P. Phillips* of counsel.

*Emmet T. Carter, Gerald D. Presberg* and *Doris J. Banta* for amicus curiae.

DALTON, J.—This is an original proceeding for mandamus. Relators seek to compel respondents to comply with the provisions of Sec. 169.515 of the Session Laws of the 67th General Assembly 1953 by creating the ''Equity Fund'' therein referred to by transferring to such fund the amounts provided by said section, all as hereinafter stated. Section 169.515 is a subdivision of Senate Substitute for House Bill No. 164, which purported to be ''An Act to repeal Section 169.410, RSMo 1951 Supp., and sections 169.430, 169.450, 169.490, and 169.510, RSMo 1949, relating to teacher and school employe retirement systems, and to enact five new sections in lieu thereof relating to the same subject, with an emergency clause.'' The above mentioned Bill is hereinafter referred to as the Act, or the 1953 Act.

The relators are citizens and resident taxpayers of the City of St. Louis and employees of the Board of Education of the City of St. Louis, employed as ''building trade mechanics,'' a class of employees excluded from membership and coverage under the Retirement System as modified by the provisions of Sections 169.410(4) and 169.510(3) of the 1953 act. The action is brought as a class action for and on behalf of relators themselves and all other employees of the Board of Education similarly situated who may care to join therein. The respondents are The Public School Retirement System of the City of St. Louis, Missouri, a corporation, and the individual members of the Board of Trustees of The Public School Retirement System of the City

of St. Louis, Missouri, who are charged with the general administration and responsibility for the proper administration of the Retirement System under the statutory provisions hereinafter referred to. Respondent corporation was created and established by law, as a retirement system, for the purpose of providing retirement allowances for employees of the St. Louis Public School System. See Sections 169.410—169.540 RSMo 1949 and the amendatory Acts dealing with the Retirement System and its operation in Districts having a population of 700,000 or over.

Respondents purport to represent themselves and all employees of the Board of Education of the City of St. Louis and all members of the Retirement System, including the employees of the Board of Education in the excluded classifications of employees under Sec. 169.410(4) RSMo 1949, as modified by the 1953 Act, who will not join in relators' petition. Respondents contend that the interests of the members of the Retirement System were unaffected by said 1953 Act and respondents demand for them the right to continue as members of the Public School Retirement System of the City of St. Louis, as the same existed prior to the passage, approval and effective date of the 1953 Act.

After the filing of relators' petition, respondents entered their appearance, waived the issuance of an alternative writ and, on the order of the court the petition filed being taken as the alternative writ, the respondents made their return thereto. Relators have moved for judgment on the pleadings on the ground that the essential facts have been admitted by respondents' answer and no legal defense to relators' claim for relief appears.

The following uncontroverted facts appear: The Public School Retirement System of the City of St. Louis was established under Laws of Missouri 1943, p. 805 et seq. and became operative on January 1, 1944. It has remained continuously in operation since that date for the purpose of providing retirement allowances for employees of the Board of Education of the City of St. Louis, as the term "employee" was defined in Sec. 169.410(4) RSMo 1949 and in the 1951 amendment thereto, to wit, as follows: "(4) 'Employee' shall mean any person regularly employed by the board of ▮▮▮ education but shall not mean a temporary or part-time employee. * * * "

Thereafter, the 67th General Assembly adopted the 1953 Act in question, which if valid, became effective August 29, 1953 and by repeal and re-enactment amended Sec. 169.410, subsection 4, by re-defining the term "employee," in part, as follows: "(4) 'Employee' shall mean any teacher regularly employed by the board of education, or any regular full time employee other than a teacher, of the school district who shall elect to be subject to this law except that the term employee shall not include persons in any of the following job classifications, services or positions * * * building trade mechanics * * *."
Numerous other specific job classifications, services or positions are

also excluded from the definition. It is admitted that the employees of the Board of Education of the City of St. Louis are employed and their job classifications are in relation to their duties and the type of work performed by said employees.

The 1953 Act, further, included Sec. 169.515, mentioned, supra, a new section. The said section is self-explanatory and its purpose clear. It is, in part, as follows: "169.515. 1. There is hereby created an Equity Fund for Members Other than School Teachers which, for the purposes of this law, shall be referred to as the Equity Fund. The board of trustees of the retirement system shall be the trustee of such fund which shall be held for the exclusive benefit of such members. To this fund shall be transferred, from the annuity savings fund and pension accumulation fund, described in section 169.490, the following amounts: (1) from the annuity savings the transfer shall consist of amounts equal to the accumulated contributions of the members other than teachers whose membership in the retirement system shall have terminated as of such effective date; and (2) from the pension accumulation fund the transfer shall consist of an amount equal to one and one-half per cent of each payment made on account of salary to such members other than teachers during the period from January 1, 1951, to the effective date of coverage under the provisions of 'An Act to provide for the coverage of certain officers and employees of the state and local governments under the old-age and survivors insurance provisions of Title 2 of the Federal Social Security Act, as amended, and providing an effective date of coverage, with an emergency clause', approved May 31, 1951, which act shall be designated for the purposes hereof as the 'Social Security Enabling Act', subject to a maximum salary payment during any calendar year of thirty-six hundred dollars. The right of any person having a credit in the Equity Fund shall be deemed to be fully vested in such person to the extent provided by this law.

"2. When the provisions of the Social Security Enabling Act have been extended to the employees of the board of education other than teachers, whose membership in the retirement system is terminated by this law, the board of trustees, as trustee of the Equity Fund, shall pay into the contribution fund created by such Social Security Enabling Act, as of the effective date of the agreement between the board of education and the state agency created by such act, the following amounts: (1) that proportion of the amount credited to the Equity Fund as the result of a transfer from the annuity savings fund which is equal to one and one-half per cent of each payment made on account of salary to the persons whose credits are represented in such Equity Fund and who are employees of the board of education on the effective date of such agreement, covering the period from January 1, 1951, to such effective date, subject to maximum earnings of thirty-six hundred dollars during any calendar year; and (2) the amount to

the credit of such persons in the Equity Fund as the result of a transfer from the pension accumulation fund which shall be equal to one and one-half per cent of each payment on account of salary to the persons represented by such transfer who are employees of the board of education on the effective date of such agreement, covering the period from January 1, 1951, to such effective date, subject to maximum earnings of thirty-six hundred dollars during any calendar year.

"3. The balance remaining in the Equity Fund after the aforesaid payments have been made, shall be distributed in the following manner: The amounts of the unpaid accumulated contributions shall be paid to the persons to whom they are credited; the remainder of the amount transferred from the pension accumulation fund shall be returned to such fund. Upon the completion of such payments and distributions, the Equity Fund shall cease to exist."

Prior to August 29, 1953, relators were members of the Public School Retirement System of the City of St. Louis, but by the amendatory act the 67th General Assembly undertook to terminate relators' memberships therein and the memberships of certain other employees by paragraph 3 of Sec. 169.510 of the 1953 Act, as follows: "(3) From and after the effective date of this section any employee of a school district, excepting those within the meaning of the term 'employee' as herein defined, other than a teacher, who shall be a member of the retirement system, shall cease to be a member, notwithstanding that such employee may continue as an employee of the school district, and all further rights or benefits thereunder, *except the right to the amount of his accumulated contributions, shall terminate.*" (Italics ours).

Respondents have failed and refused to create the "Equity Fund" provided for by Sec. 169.515, supra, and have failed and refused to transfer from the "annuity savings fund" and from "the pension accumulation fund" the amounts required by said Sec. 169.515. Respondents admit that they have refused to conform to the provisions of the 1953 Act and insist that the said Act is unconstitutional and void because in conflict with and destructive of vested rights of members under the original act establishing the Retirement System, all as hereinafter set out.

Respondents contend that vested and contractual interests and contractual relationships were created under the provisions of Sec. 169.410 et seq. RSMo. 1949, and particularly under Sec. 169.430, subsections 1 and 2 and Sec. 169.510, subsection 2, RSMo. 1949, as they existed prior to the 1953 Act; that "the members who were and are members of said Retirement System prior to said amendment thereof acquired a vested right and interest in the benefits provided for under said Retirement Plan;" that the Act in question "undertakes to deprive members of the St. Louis Retirement System * * * of vested rights and impairs their contractual rights in the system as presently being

operated and as operated prior to the enactment" of the 1953 Act; and that the 1953 Act "undertakes to deprive members of the St. Louis Public School Retirement System of the benefits therein provided without giving any of such members any guarantee or any assurance, within the terms of its provisions, providing any substantial substitute for such benefits through coverage under the Federal Social Security Act, in that there is no reasonable certainty that such coverage under the Federal Social Security Act can or will be effectuated by the Board of Education in behalf of and for the benefit of its employees who are now and have been prior to said purported amendment members of the Public School Retirement System."

Respondents insist that, since the 1953 Act "undertakes to deprive members of the St. Louis Public School Retirement System of benefits, accrued or potential, under the original retirement plan, it deprives them of their property without due process of law in violation of Art. I, Sec. 10 of the Constitution of Missouri, 1945; that, since it purports to invalidate contractual and vested rights acquired by members of the Retirement System under Sections 169.410 et seq. RSMo 1949, and by retroactive legislative act to deprive them of their status as members previously acquired, it impairs the obligation of contracts in violation of Art. I, Sec. 13 of the Constitution of Missouri, 1949; that the act is void as a regulatory measure or modification of the retirement plan because it offers no substitute therefor that would protect and respect ▮▮▮ rights vested under the existing plan in favor of its present members, inasmuch as it fails to achieve its purpose of providing compulsory Federal Social Security for the excluded employees of the School District, but deprives them of a large number of the assured benefits under the existing plan; and that, if valid, the 1953 Act "imposes no duty upon respondents to establish the 'Equity Fund' provided for therein within any particular time or before any stated date."

Relators contend that the refusal of respondents to create the "Equity Fund" as provided by Sec. 169.515 is unlawful and arbitrary; that it deprives relators of rights and privileges granted under the act; that it deprives them of the benefits of Title 2 of the Federal Social Security Act, as amended, and as relates to Old-Age and Survivors Insurance; that relators are within a job classification that is excluded by the definition of an "employee" in Sec. 169.410(4) of the 1953 Act, and as relates to the Public School Retirement System of the City of St. Louis; that relators are desirous of obtaining the benefits of the provisions of Title 2 of the Federal Social Security Act, as amended, and as relates to Old-Age and Survivors Insurance; that the failure and refusal of respondents to comply with said Sec. 169.515 of the 1953 Act denies and deprives relators of such benefits under said Title 2, supra, including "the right to secure retroactive social security coverage from January 1, 1951, providing coverage is

obtained prior to December 31, 1953''; that the individual respondents, constituting the Board of Trustees have violated their statutory duties, as required by Sec. 169.450 of the said 1953 Act, in failing and refusing to make effective the provisions of Sections 169.410 to 169.540, inclusive, as now amended and effective; that, in view of the time limit within which their rights must be adjudicated, no other tribunal can afford complete relief; and that, unless relief is granted, relators will suffer irreparable harm and injury for which they have no adequate remedy. Relators ask that respondents be required to comply with the provisions of Sec. 169.515 of the 1953 Act by creating the ''Equity Fund'' by the transfer of the amounts required by such section.

As stated, this is an original proceeding for mandamus. ''A writ of mandamus has been justly denominated a hard and fast writ, * * * the exponent of judicial power, and hence is reserved for extraordinary emergencies. It does not issue except in cases where the ministerial duty sought to be coerced is simple and definite, arising under conditions admitted or proved and imposed by law. It does not issue where the right is doubtful, or where there is another adequate remedy.'' State ex inf. Barker, Attorney General, ex rel. Kansas City v. Kansas City Gas Co., 254 Mo. 515, 163 S.W. 854, 857; State ex rel. Horton v. Bourke, 344 Mo. 826, 129 S.W. (2d) 866, 868.

In the case of State ex rel. School Dist. No. 24 of St. Louis County v. Neaf, 344 Mo. 905, 130 S.W. (2d) 509, 511, a mandamus proceeding to compel the assessment and taxation of certain property in accordance with the law as it existed prior to an alleged unconstitutional amendment, this court said: ''The amendment is presumed to be constitutional. If possible, under the general rule, the question of the validity of the amendment should be given deliberate consideration upon a full trial of the cause. 'The office of mandamus is to execute not adjudicate.' The writ may be freely used to compel the performance of ministerial official duties. Even so, the right to the writ must not be doubtful. However, under extraordinary emergencies and in matters of more than local concern, we have ruled in mandamus the question of the constitutionality of statutes. We also have ruled such questions in mandamus where the statute was clearly and obviously unconstitutional.''

Of course the court will not compel, by mandamus, the performance of an unlawful act. State ex rel. Kent v. Olenhouse, 324 Mo. 49, 23 S.W. (2d) 83, 86; Bushnell v. Miss. and Fox River Drainage Dist., 233 Mo. App. 921, 111 S.W. (2d) 946, 953.

''The purpose of the extraordinary writ of mandamus is to compel the performance of a ministerial duty which one charged with the duty has refused to perform. The writ can only be issued to compel a party to act when it was his duty to act without it. It confers upon the party against whom it may be issued no new authority, and from its very nature can confer none.'' State ex rel. and to the Use of

Stoecker v. LeMay Ferry Sewer Dist. of St. Louis County, 332 Mo. 965, 61 S.W. (2d) 724, 726. The issuance of the alternative writ is always discretionary "but, when once issued, we have most generally followed the case to the end." State ex rel. Nolen v. Nelson, 310 Mo. 526, 275 S.W. 927, 928. "A litigant asking relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy." State ex rel. Porter v. Hudson et al., 226 Mo. 239, 265, 126 S.W. 733. The burden, therefore, rests upon relators. Adair Drainage Dist. v. O. & K. C. R. Co., 280 Mo. 244, 257, 217 S.W. 70.

This case presents a question concerning the superiority of the state's sovereign power to exclude (from all future benefits to which they might otherwise have become entitled under the terms of the existing Retirement System) those employees of the Board of Education of the City of St. Louis, who are in the job classifications, services and positions excluded under the provisions of Sec. 169.410(4) of the 1953 Act, and to terminate the membership of such employees in such Retirement System and to limit, fix and determine the rights of such excluded employee-members in accordance with the provisions of Sections 169.510(3) and 169.515 of the 1953 Act. Whether the state can legally do what it has in this instance undertaken to do depends, first, upon whether the employees of the Board of Education in the excluded classifications, services and positions had a contractual relationship with the Board of Education of said city and with the Public School Retirement System of the City of St. Louis, as members thereof, by reason of the provisions of Sections 169.410 to 169.540 RSMo 1949, as amended and existing prior to August 29, 1953, that is, whether such excluded employee-members by reason of their prior relationship with the School District and as members of the Retirement System had any contractual rights, property rights or vested or potential interests in and to the benefits provided by such retirement system as it had theretofore existed. It depends, second, upon whether the section of the Act sought to be enforced in this proceeding impairs the obligation of contract and is therefore void. A determination of these issues requires a careful review of specific statutory provisions governing the relationship between the Retirement System and its members prior to the effective date of the 1953 Act.

Section 169.430 RSMo 1949, in part, provided: "1. All persons who become employees and all employees who enter or re-enter the service of the school district after the date the retirement system begins operation shall become members as a condition of their employment and shall receive no pension or retirement allowance from any other pension or retirement system supported wholly or in part by the school district or the state, nor shall they be required to make contributions under any other pension or retirement system of the school

district or the state, anything to the contrary notwithstanding. 2. Any employee in service on the date the retirement system becomes operative shall become a member as of that date unless prior thereto he shall file with the board of trustees on a form prescribed by the board of trustees a notice of his election not to become a member of the retirement system and a duly executed waiver of all present and prospective benefits which would otherwise inure to him on account of his participation in the retirement system. 3. Any employee whose membership is contingent on his own election and who elects not to become a member, may thereafter revoke such election and become a member, but no such employee shall receive credit for prior service unless he becomes a member within one year from the date the retirement system becomes operative. * * * ''

 Relators say that ''the statute set up a compulsory plan to which the employee was required to contribute.'' We think it provided for voluntary participation. It is apparent that the above section made it optional with the then employees of the school district to come in or stay out of the Retirement System. It further granted the employees electing to stay out the privilege of subsequently electing, at their option, to revoke the election to stay out and, thereupon, to elect to come in and become members of the Retirement System. No one was required to accept employment with the School District but, if one voluntarily did so, it was ''a condition of their employment'' that they became members of the Retirement System. Section 169.490 RSMo 1949 provided that ''every *member* shall be deemed to *consent* to the deductions made and provided for herein * * *.'' (Italics ours). The statutes governing the relationship of the employees to the Board of Education and to the Retirement System became a part of the contract of employment as much as if written therein. Bowers v. Kansas City Public Service Co., 328 Mo. 770, 41 S.W. (2d) 810, 812(4); 17 C.J.S. 782, Contracts, Sec. 330; Ball v. Board of Trustees, 71 N.J. Law 64, 58 A. 111. And see Sections 163.080-163.100 and Section 432.070 RSMo 1949.

Section 169.410 RSMo 1949, as amended Laws of Missouri 1951, p. 513, House Bill No. 140, Sec. 1, defined certain terms, some of them being as follows: '' (15) 'Accumulated contributions' shall mean the sum of all amounts deducted from the compensation of a member and credited to his individual account in the annuity savings fund, together with interest allowed thereon as provided in section 169.480 * * *. (18) 'Annuity' shall mean annual payments for life derived from the accumulated contributions of a member. All annuities shall be payable in twelve equal monthly installments. (19) 'Pension' shall mean annual payments for life derived from appropriations provided by the school district. * * * (20) 'Retirement allowance' shall mean the sum of the annuity and the pension, or any benefits in lieu thereof, granted on account of a member upon retirement.''

Section 169.460 RSMo 1949, provided for the manner and terms of retirement, for special retirement and for retirement for disability, etc., and fixed the amount of service retirement allowances and allowances for retirement for disability, et cetera. Subdivision 2 of Sec. 169.460, in part, provided: "2. Upon retirement for service a member shall receive a service retirement allowance which shall consist of: (1) An annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement; and (2) A pension, in addition to his annuity, which shall be equal to one-one hundred and fortieth of his average final compensation multiplied by the number of years of his membership service at his minimum service retirement age not exceeding thirty-five years; * * * and (3) * * * (providing other benefits) * * *. 6. Upon retirement for disability a member shall receive a service retirement allowance if he has attained his minimum service retirement age, otherwise, he shall receive a disability retirement allowance which shall consist of: (1) An annuity which shall be the actuarial equivalent of his accumulated contributions at the time of retirement; and (2) A pension, in addition to his annuity, which shall be equal to nine-tenths of one-one hundred and fortieth of his average final compensation multiplied by the number of years of his membership service not exceeding thirty-five years; and (3) * * * (providing other benefits) * * *.

"11. Any member upon retirement shall receive his benefit in a retirement allowance payable throughout life unless he shall elect before the first payment of any benefit becomes due, to receive the actuarial equivalent at that time of his retirement allowance in a lesser retirement allowance, payable throughout life with the provision that if he dies before he has received in annuity payments the present value of his annuity as it was at the time of his retirement, the balance shall be paid in one sum to his legal representatives or to such person as he shall nominate by written designation duly acknowledged and filed with the board of trustees * * *."

Section 169.490 RSMo 1949, provided that all assets of the Retirement System be credited among five funds, classified the funds and fixed the contributions to be made by the members and by the School District. These contributions on behalf of members were to be by deductions from compensation paid, to wit, "five percentum of his earnable compensation," with specified exceptions. Provision was made for contributions by the school district, to wit, "normal contributions" and "accrued liability contributions," etc. Relators say that "the Board of Education makes contributions to the system to help finance the cost of the benefits at the rate of 9.58 per cent of the total annual earnable compensation of all members." Subdivision 2(2) of the section provided that, "The deductions provided for herein are declared to be a part of the salary of the member and the making of such deductions shall constitute payments by the member out of his

salary or earnings and such deductions shall be made notwithstanding that the minimum compensation provided by law for any member shall be reduced thereby. Every member shall be deemed to consent to the deductions made and provided for herein, and shall receipt for his full salary or compensation, * * * except as to benefits provided by sections 169.410 to 169.540.''

Section 169.510(2) RSMo 1949, further provided: ''No alteration, amendment or repeal of sections 169.410 to 169.540 shall be deemed to affect the rights of members of any retirement system established thereunder with reference to deposits previously made, *or to reduce any accrued or potential benefits to those who are members at the time when such alterations, amendments, or repeal became effective* or to reduce the amount of any retirement allowance then *payable*.'' (Italics ours).

By reference to specific statutory provisions governing the Retirement System in question, it is not our intention to neglect or ignore any other applicable provision, because only upon full consideration of all of the applicable provisions can a determination be made concerning the legal relationship existing between the Retirement System and its members immediately prior to the effective date of the 1953 Act.

■ In support of the validity of Sec. 169.515, supra, and in support of relators' right to relief by mandamus to require respondents' compliance with the provisions of said section, relators rely upon certain well established general rules. The first is well stated in 40 Am. Jur., Pensions, Sec. 24, p. 981, as follows: ''The unquestioned general rule is that a pension granted by the public authorities is not a contractual obligation but a gratuitous allowance, in the continuance of which the pensioner has no vested right, and that a pension is accordingly terminable at the will of the grantor, either in whole or in part. And since there is no contract on the part of the state to continue the payment of a benefit or annuity, a change in the law affecting such benefit or annuity does not impair the obligation of a contract or deprive a pensioner of property within the constitutional meaning.'' This general rule is recognized in the extensive annotations appearing in 54 A.L.R. 943, 98 A.L.R. 505; 112 A.L.R. 1009; and 137 A.L.R. 249. The rule was followed in State ex rel. King v. Board of Trustees of Firemen's Pension Fund of Kansas City, 192 Mo. App. 583, 184 S.W. 929, 933, 188 S.W. 239 (decided in 1916). The court held that the fact that each month a fireman paid from his salary a certain sum into a public fund, to be used as a pension for firemen, did not give him a vested right in the pension fund. The court said: ''Governmental employees can have no property rights in a pension fund, nor can those claiming under them have any such rights except their claims be based upon and come within the laws governing the fund.'' The rule was recognized in State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W. (2d)

68, 72(6). The rule is fully discussed and followed in the case of Pennie ■ v. Reis, 132 U. S. 464, 10 S. Ct. 149, 33 L. Ed. 426, 429 (decided in 1889).

■ The A.L.R. annotations cited show the changing attitude of the courts, the wide diversity of opinion, the conflict of decisions and the marked changes in public policy which have resulted in the passage of laws providing for modern retirement systems that are very different in operation and in principle from the early pension laws, which were not based upon any contractual relationship. The last annotation cited, 137 A.L.R. 249, points out that, while the traditional rule is still adhered to, "the number of cases in which its application has been deemed proper has diminished in comparison with those upholding as vested, at least in a limited sense, rights of beneficiaries under various retirement pay and other plans similar in nature to adjusted compensation and insurance features. The growing number of such cases is, of course, due to the adoption and extension of such systems to greater numbers and groups of employees in all branches of public and semi-public service." And see 40 Am. Jur., Pensions, Secs. 17 and 24; 78 C.J.S. 1176, Sec. 231(e). It is clear, however, that the rights of any beneficiary, or member of any retirement system can only be determined by very careful scrutiny of the detailed provisions of the particular statute controlling the creation and operation of the particular retirement system and under the particular facts of the case. Relators insist that the traditional rule applies here.

Whether any contractual relationship of any kind exists or existed between the Public School Retirement System of the City of St. Louis, Missouri, a corporation, and any or all of its members, at any time prior to the effective date of the 1953 Act, depends upon the specific provisions of the original retirement act and its prior amendments. Both relators and respondents cite the case of Keegan v. Board of Trustees, 412 Ill. 430, 107 N.E. (2d) 702, 705, where the applicable Illinois rule is stated to be "that statutory pensions, retirement allowances or benefits for employees requiring compulsory participation confer no vested rights upon the participants. Such acts are based on the sovereign power of the State to provide for the general welfare of the employees and society generally and are not in the nature of contracts between the participants and the State. Vested contractual rights arise by reason of the payment of a voluntary consideration and compulsory contributions to such funds are not voluntary consideration. Where, however, a statute creates a pension or annuity fund and confers an elective right as to participation therein upon the individual participant, the participant's contributions are voluntary consideration and create vested contractual rights." In that case the court construed a statute which provided that each participating employee shall, by virtue of the payment of any contributions to this fund, receive a vested interest in the annuities and bene-

fits provided in this Act'' to mean that ''a vested right is created in the participant to share in the fund in the manner and on such terms as the legislature may, from time to time, determine best serves the welfare of the participants and the people of the State.'' The court held that the vested interest provided for was not a contractual interest, since participation in the particular retirement system was compulsory; and that changes commensurate with changing economical conditions were not precluded.

We are not here considering the rights under the Act of those members who have heretofore completed all of the necessary steps for the immediate payment of benefits under the Retirement System and whose rights have fully accrued and are now vested. See State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W. (2d) 68, 72(6-7). We are considering the rights of those employees of the Board of Education, who are members of the Retirement System (and who are now sought to be excluded) and who have voluntarily accepted the offer of potential benefits under the provisions of the statutes setting up the Retirement System and who have entered upon a compliance of the terms provided, which are to the effect that if such employees remain employees of said Board and remain members of the Retirement System, make the necessary contributions and meet the requirements thereof, as provided, that they will be entitled to the proposed benefits thereunder.

There can be no question but that the 1943 Act, Laws 1943, p. 805 et seq. provided for a comprehensive retirement system for all of the employees of the Board of Education of the City of St. Louis. The Retirement System has been in full operation since January 1, 1944. Considering the 1943 Act as a whole and giving effect to all of its provisions and considering the applicable amendatory provisions in force and effect immediately prior to the effective date of the 1953 Act, we think it is clear that the 1943 Act and its subsequent modifications were intended to and did provide for the creation of specific contractual rights in the members of the Retirement System to obtain specific benefits upon compliance with the terms. These rights cannot be divested in the manner and form sought to be divested in the 1953 Act.

As stated, it was optional with the employees of the Board of Education of the City of St. Louis, when the plan was put into effect, to elect to come under the provisions of the Retirement System or to elect to stay out. Clearly participation in the Retirement System was voluntary and not compulsory as to those who were employed at the time the Retirement System went into effect. Those employed since have consented to become members of the system as a condition to their employment.

In State ex rel. Gorczyca v. Minneapolis (1928) 174 Minn. 594, 219 N.W. 924, it is said that ''A pension or retirement allowance is

a gratuity where it is granted for services previously rendered, and which, at the time they were rendered, were fully paid for and gave rise to no legal obligations for further compensation. * * * It is not a gratuity when the services are rendered while the pension or retirement relief statute is in force, so that the statute becomes a part of the contract of employment and contemplates such pension or allowance as part of the compensation for the services rendered.''

The legislature in passing the original 1943 Act, although, in effect, recognizing the right of subsequent legislatures to alter, amend or repeal the act, expressly provided that ''no alteration, amendment or repeal of this act shall be deemed to affect the rights of members of any retirement system established thereunder with reference to deposits previously made, or to reduce any accrued or potential benefits to those who are members at the time when such alterations, amendments, or repeal became effective or to reduce the amount of any retirement allowance then payable.'' Laws 1943, p. 824, Sec. 11(b). We think that this provision evidences an intention to create contractual rights. If contractual rights to potential benefits under the Retirement System came into existence as a result of the voluntary acceptance of the offer provided by the statute, the beginning of compliance by the employee-members and the payment of consideration in the form of contributions, such rights cannot be taken away by legislative action. Certain provisions of the 1953 Act, however, clearly tend to reduce, divest and destroy in a material and substantial manner the potential rights of the employees of the Board of Education of the City of St. Louis, who were members and potential beneficiaries of the Retirement System in question on the effective date of the 1953 Act, and who are now sought to be excluded from membership in the Retirement System by the said 1953 Act. Clearly, we believe, Sec. 169.510 and Sec. 169.515 of the 1953 Act impair the obligation of contract and are unconstitutional and void. Ball v. Board of Trustees of Teachers' Retirement Fund, 71 N.J. Law 64, 58 A. 111; Raines v. Board of Trustees of Ill. State Teachers Pension and Retirement Fund, 365 Ill. 610, 7 N.E. (2d) 489, 491; Ridgley v. Board of Trustees of State Institutions Teachers' Pension and Retirement Fund, 371 Ill. 409, 21 N.E. (2d) 286, 287; Keegan v. Board of Trustees, supra; State ex rel. O'Neil v. Blied, et al., 188 Wis. 442, 206 N.W. 213, 214; State ex rel. Stafford v. State Annuity & Investment Board, 219 Wis. 31, 261 N.W. 718, 719; Clarke v. Ireland, 122 Mont. 191, 199 P. (2d) 965, 969; Retirement Board v. McGovern, 316 Pa. 161, 174 A. 400, 404; Driggs v. Utah State Teachers' Retirement Board, 105 Utah 417, 142 P. (2d) 657, 663(9); Crawford v. Teachers' Retirement Fund Ass'n., 164 Ore. 77, 99 P. (2d) 729 (1940) 733; In re Sanborn, 159 Wash. 112, 292 P. 259, 261; Bender v. Anglin, 207 Ga. 108, 60 S.E. (2d) 756, 759.

■ Relators, however, further contend that the 1953 Act does not impair the obligation of contract and is valid and enforceable for another reason and they rely upon a general rule of law that is stated in 12 C.J. 806, Sec. 238, as follows: ''The power to amend and repeal legislation as well as to enact it is also vested in the legislature, and a legislature cannot restrict or limit its right to exercise this power by prescribing modes of procedure for the repeal or amendment of statutes; nor may one legislature restrict or limit the power of its successors.'' And see 50 Am. Jur. 62, Statutes, Sec. 45. In so far as the police power of the state is concerned: ''The police power is a governmental function, and neither the state legislature nor any inferior legislative body to which a portion of such power has been granted can alienate, surrender, or abridge the right to exercise such power by any grant, contract, or delegation whatsoever, although in some jurisdictions no provision of controlling law expressly forbids such action.'' 16 C.J.S. 549, Constitutional Law §179. And see City of St. Louis v. Cavanaugh, 357 Mo. 204, 207 S.W. (2d) 449, 455(6) and cases cited.

Except where the police power is directly involved the right of the legislature to alter, amend or repeal legislation, is subject ''to constitutional restrictions and inhibitions, such as the prohibition against the extinguishment of vested rights which have been acquired under the former law, or the impairment of the obligations of contract.'' 50 Am. Jur. 62, Statutes, Sec. 45. The general rule concerning the inability of one legislature by legislation to bind future legislative bodies is not inconsistent with the power of the legislature to contract or to set up a retirement system whereby the employees of a school system enter into contractual relationships which cannot be terminated in the manner and form as provided by the 1953 Act. Where contractual rights arise from prior legislation the power of subsequent legislatures may be limited accordingly. In Hall v. State, 103 U.S. p. 5, 26 L. Ed. 302 (cited with approval in L. I. Water Supply Co. v. Brooklyn, 166 U.S. 685, 690, 17 S.Ct. 718, 41 L. Ed. 1165), it was held that a contract, pursuant to a legislative enactment, between the state and a commissioner to make a geological survey was protected under the federal Constitution from impairment or destruction by late legislative action. And see Clarke v. Ireland, supra, 199 P. (2d) 965, 970.

■ A further general rule relied upon by relators is that an amendatory statute which effects only a beneficial change in the form of an existing right does not necessarily offend against the constitutional prohibitions against retrospective laws or laws impairing the obligation of a contract, or the deprivation of property without due process of law. Willhite v. Rathburn, 332 Mo. 1208, 61 S.W. (2d) 708, 711 (7-9). Relators further cite State ex rel. Holton v. Tampa, 119 Fla. 556, 159 So. 292, 98 A.L.R. 501; People ex rel. Donovan v. Retirement Board Policemen's A. & Ben. Fund, 326 Ill. 579, 158 N.E. 220, 54 A.L.R. 940; Keegan v. Board of Trustees, supra; Dallas v. Tram-

mell, 129 Texas 150, 101 S.W. (2d) 1009, 112 A.L.R. 997; Mell v. State, 130 Ohio St. 306, 199 N.E. 72. In the Dallas case (112 A.L.R. 997, 1004), the court said: "In our opinion, the rule that the right of a pensioner to receive monthly payments from the pension fund after retirement from service, or after his right to participate in the fund has accrued, is predicated upon the anticipated continuance of existing laws, and is subordinate to the right of the Legislature to abolish the pension system, or diminish the accrued benefits of pensioners thereunder, is undoubtedly the sound rule to be adopted."

Neither of the last two general rules relied upon have any application here in view of the particular statutory provisions of the 1953 Act. Further, we are not here concerned with the right of the legislature to modify or amend or repeal the Act or to make any change therein that does not result in a material and substantial reduction of potential benefits to members of the Retirement System on the effective date of the 1953 Act. See Driggs v. Utah State Teachers' Retirement Board, supra, 142 P. (2d) 657, 661.

Further, we think it is apparent that the 1953 Act provides no substantial substitute plan for the protection of the excluded members of the Retirement System in question. Federal Social Security protection is not definitely provided, nor substituted. Certainly, no plan has been presented and none is required to be presented to the State Agency by the Board of Education of the City of St. Louis seeking to have the Social Security Act apply to any of its employees who are members of the St. Louis Public School Retirement System, and are sought to be excluded by the Act. Such a plan, if presented, would have to be acceptable in all respects under the Social Security Act, and could only be approved by the Administrator of the Social Security Act to relate back to January 1, 1951 and then only if made effective during the calendar year 1953. Sec. 42 U.S.C.A. Sec. 401 et seq. (particularly Sec. 418 as amended June 28, 1952, 66 Stat. 285) and Laws of Missouri 1951, p. 788 et seq. (Secs. 105.300 et seq. RSMo. 1951 Supp.) There is no guarantee of substitute coverage under the Federal Social Security or under any other system, and the amounts provided to be transferred to the "Equity Fund," do not purport to bear any direct relationship to the value of the existing coverage of the "excluded members" under the Retirement System in effect prior to the effective date of the Act. For instance, prior payments by the school district to the Retirement System, known as "Normal Contributions" and "Accrued Liability Contributions," are disregarded, except as provided by Sec. 169.515, 1(b) of the 1953 Act, and the excluded members may get the benefit of only a portion of "the pension accumulation fund" in the event that Federal Social Security coverage is obtained under the "Social Security Enabling Act." And see subdivision 3 of the same section. In this connection respondents insist that the proposed transfer, if accomplished, "would adversely

affect the rights of many present members of the School Retirement Plan because of their advanced age and reduced years of prospective service as employees, and because it would prevent them from acquiring benefits already accrued''; and that the statute purporting to authorize such a ''proposed plan deprives the present members of other potential benefits, e.g., disability benefits, which are not provided under Social Security.''

In view of the particular issues of this case and the particular relief asked, we need not fully consider these matters. No specific case involving the rights of a particular individual under the Retirement System is before us. No currently employed teacher and no retired teacher is before us and, except for relators, no individual beneficiaries of the Retirement System are personally represented. The right of a particular member of the Retirement System to specific benefits under particular facts is not presented for determination. The sole issue here is whether relators have a clear, legal right to require respondents to set up the ''Equity Fund'' as provided by Sec. 169.515. No clear, definite and certain right to such relief is here shown. It is only necessary to hold that Sec. 169.515 of the 1953 Act is invalid because it impairs the obligation of contract and that compliance therewith should not be required by mandamus.

For the reasons stated the writ of mandamus is therefore denied. All concur.