STATE of Missouri ex rel. UNIVERSITY PARK BUILDING CORPORATION, a Missouri Corporation, Relator-Appellant,

v.

Charles T. HENRY and A. A. Jensen, Individuals, Respondents.

No. 31511.

St. Louis Court of Appeals.

Missouri.

March 17, 1964.

Rehearing Denied April 15, 1964.

John J. Shanahan and Crowe, Schneider, Shanahan & Lebowitz, St. Louis, Levin & Weinhaus, St. Louis, for appellant.

John J. Morris, City Counselor, City of University City, University City, for respondents.

WOLFE, Acting Presiding Judge.

This is an action in mandamus. It was brought to compel the City Manager and the City Building Commissioner of University City to revoke a building permit that had been issued. There was a hearing and a judgment denying the writ, and the unsuccessful relator has appealed.

The relator's petition in substance alleges that the relator owned a building on Delmar Avenue in the City of University City, and that respondent, A. A. Jensen, the Building Commissioner, issued a building permit to a corporation known as "M. D. Building, Inc." for the construction of a building immediately adjacent to the one owned by the relator-appellant. It is alleged that the plans and specifications submitted to Jensen for the issuance of the writ do not comply with the ordinances of the City, as those ordinances relate to provisions for off-street parking. It alleges that relator's property will suffer damage by a serious parking problem caused by the alleged failure to have sufficient off-street parking in the vicinity of the building being constructed, and it concludes with a prayer that a writ of mandamus issue to compel respondents to revoke the building permit.

After the filing of the petition the respondents were "ordered to show cause why the *alternative writ* should not be granted as prayed." (Emphasis ours.) An alternative writ in mandamus is in itself an order to show cause. It commands the respondent to do the act required or to show cause why he should not do it. State ex rel. Tate v. Sevier, 334 Mo. 771, 68 S.W.2d 50, l. c. 52. The function of the alternative writ is to give the respondent the benefit of a return and an opportunity to be heard before judgment is pronounced. 55 C.J.S. Mandamus § 312, p. 550.

No return was filed in this case, but it appears that the order to show cause was treated as an alternative writ to which a return had been made. The parties appeared and evidence was fully presented putting in issue the allegations of the petition. We shall therefore consider the matter as having been properly before the trial court.

The evidence brought out the following facts:

The relator, University Park Building Corporation, of which a physician named Robert S. Weinhaus was the President, owned a building at 7165 Delmar Boulevard in University City. It was an office building for doctors of medicine and dentistry. Next to the relator's building there was an old building that housed a pharmacy, several retail stores, a beauty shop, and

an insurance agency. No off-street parking was provided for any of the occupants or patrons of the building.

Dr. Weinhaus testified that he had heard for many months that the old building was to be wrecked and a new medical building erected on the site. He heard that Dr. Simon L. Baumgarten, one of the tenants of his building, was interested in the new project. He talked to Dr. Baumgarten and attempted to sell him the building which the relator owned. Dr. Weinhaus in his testimony referred to the building owned by the corporate relator as "my" building. He said that he offered his building to Baumgarten for what he had paid for it. He said that he made the offer because he thought that a parking problem would be created, and it would reduce the value of his building. Dr. Baumgarten apparently was not interested in buying the building, and his corporation, the M. D. Building, Inc., proceeded to erect the new building.

On November 2, 1962, a representative of the M. D. Building, Inc. notified Dr. Weinhaus that the old building adjoining his would be wrecked and requested him to take such precautions as were necessary to protect his property. On November 9, Dr. Weinhaus received a letter from the Widmer Engineering Company, which was to construct the new building. This letter advised him that in about fifteen days construction would start on the new building. The letter requested him to take necessary steps to protect his retaining wall. When Dr. Weinhaus received this letter he wrote to the builder and asked for a copy of the plans for the new building. He was told by phone that he could see a copy of the plans on file in the Building Commissioner's office.

On November 16, attorneys for Dr. Weinhaus wrote a letter to the M. D. Building, Inc., informing them that its plans did not conform with the building code as it related to parking. It stated that the M. D. Building, Inc. permit was subject to revocation and threatened "injunctive proceedings." By November 28 the old building had been wrecked and the new one was started. This suit was filed on December 1.

Relator offered in evidence the ordinances upon which it relied. One section of the building code stated that one parking space should be provided for each three hundred feet of floor area and an additional parking space for floor area equal to 60 square feet in excess of 300 square feet or any multiple thereof. An ordinance of the zoning code provided the manner of determining the floor area of a building when off-street parking was required. The building code also provided that the parking space should be at least eight and one-half feet by twenty feet, with a vertical clearance of seven feet, exclusive of access drives or aisles, ramps, columns, or office and work areas. Plans were required to be submitted, showing parking facilities in compliance with the code, when an application for a building permit was filed.

The plans that had been filed were introduced in evidence. One sheet of the plan had been supplemented by another, which showed the parking area. The original plan showed only the inside parking area, and the supplemental plan showed an outside parking area, part of which was on the property of the M. D. Building, Inc., and part consisted of a seven and a half foot strip from an unused alley adjoining the property. The property and the alley were in a private subdivision, and the alley was to be used by permission of the trustees of the subdivision. The trustees had also approved the building plans.

The relator called an architect, who at their request had examined the plans, and he said that the floor space reserved for parking would only accommodate 21 or 22 automobiles.

The evidence indicated that there should be provision for 25 parking spaces in order to comply with the ordinances then in force. The Building Commissioner maintained that 26 cars could be parked in the

building and others on the outside lot, so as to provide a total of 28 to 30 parking spaces. In arriving at the figure for the inside parking, he said that some cars might be in the access aisles and moved about to provide ingress and egress to the parking area that they blocked. He arrived at the figure for the inside parking by dividing the area planned for that purpose by the number of square feet required. This was the manner in which he had examined all such plans submitted. There had been some changes in the plan after the permit had been issued, and the architects who testified stated that this was usual and occurs in about fifty percent of the plans of buildings erected.

The court denied the writ, holding that ' considerable weight should be given to the construction placed upon the code by the Building Commissioner. It denied relator's contention that the parking space must be 170 square feet and at the same time 8½ by 20 feet. It held this to be unduly restrictive and not within the legislative intent of the City Council, and that the dimensions of 8½ by 20 feet were "directive and parenthetical rather than absolute and mandatory." It held that 25 parking spaces had been provided within the building. No consideration was given to the off-site parking facilities available by the permissive use of part of the unused alley. Perhaps the court ignored this because it considered the on-site parking adequate. It may have considered the off-site parking excluded by a section of the ordinance which provides in part:

"No such off-site parking facilities shall be authorized and no zoning certificate shall be issued where the plans call for parking facilities other than on the same zoning lot, until and unless the Plan Commission has reviewed the plans and heard the applicant and made findings that the common ownership or possession of the zoning lot and the site of the parking facilities are reasonably certain to continue and that the off-site parking facilities will be maintained at all times during the life of the proposed use or building."

The off-site parking could have been considered if the builders had "possession" of the strip in the alley. It is maintained that the builders only had permissive use, and there is no evidence except that they had permission to use a portion of the alley. The word "possession" has been discussed in 72 C.J.S., p. 233, as follows:

"It has been said that in common speech and in legal terminology no term is more ambiguous than the word 'possession,' whether considered in its relation to real property or personal property, and this is especially true when it occurs in statutory provisions."

It may be that the permissive use, if the nature of the permission had been fully developed, would be sufficient "possession" to comply with the statute. We do not need to pass upon this, however, as we take the view that the relator has failed to make a case in other respects.

 It has been held that a writ of mandamus issues only in a case of necessity to prevent injustice or great injury. If there is any doubt of its necessity or propriety, it will not be issued. State ex rel. Kansas City Bridge Co. v. Missouri Workmen's Compensation Commission et al., Mo. Sup., 92 S.W.2d 624; State ex rel. Silverman v. Kirkwood, Mo.App., 230 S.W.2d 513; State of Missouri ex rel. Sho-Me Power Corporation v. Hawkins, Mo.App., 337 S.W.2d 441. One seeking the writ must allege and prove that he has a clear, unequivocal, specific right to the thing claimed. He must show himself possessed of a clear and legal right to the remedy. State ex rel. Phillip et al. v. Public School Retirement System of the City of St. Louis et al., 364 Mo. 395, 262 S.W.2d 569. The burden of proof rests upon the relator. Adair Drainage Dist. v. Quincy, O. & K. C. R. Co., 280 Mo. 244, 217 S.W. 70; State ex rel. Phillip v. Public School Retirement System, supra; State ex rel. Robert C. Reis v. Nangle, Mo.App., 349 S.W.2d 508.

Viewing the evidence in the light of the foregoing rules, it is apparent that it is deficient in several respects. According to the evidence, changes are frequently made in plans after the building permit has been issued. Changes in the plans occur about fifty percent of the time. The very nature of checking the many details of construction to see that they conform to a comprehensive building and zoning code requires this. If, therefore, the building in question was not in proper conformity with the existing ordinances, there was no fixed duty upon the Commissioner to revoke the building permit, for he could request changes in the plan if they did not in fact meet the requirements of the ordinances. This was a discretion properly invested in him, and mandamus will not lie to compel an act when its performance is discretionary, for the relator under such circumstances cannot show that he is entitled by a clear legal right to the remedy he seeks. Mandamus does not establish a right, but enforces one that is established. State ex rel. and to Use of Crites v. Short, 351 Mo. 1013, 174 S.W.2d 821.

It should also be noted that the relator predicates its request for mandamus on the ground that it will suffer special damages by reason of the permit not being revoked, in that the value of its building will be diminished. In this respect the evidence was quite unconvincing, for it appears that parking is now provided where none was provided before. If the plaintiff's view of the evidence were accepted, it would mean, at the most, that at times somewhere in the vicinity there might be three cars parked. How this could possibly depreciate the value of the building was not elaborated upon.

Neither was there any proof of demand upon the Building Commissioner to revoke the permit. Mandamus can enforce an existing duty. It can never be brought to enforce an anticipated omission of duty. There must, therefore, appear a refusal to act before the writ will go. State ex rel. Star Publishing Company v. Associated Press, 159 Mo. 410, 60 S.W. 91, 51 L.R.A. 151; State ex rel. Onion v. Supreme Temple Pythian Sisters et al., 227 Mo.App. 557, 54 S.W.2d 468; State ex rel. Bluford v. Canada, 348 Mo. 298, 153 S.W.2d 12. There are many exceptions to the rule requiring demand, but we do not think that the relief sought here brings it within any of those exceptions.

The writ does not issue where the right asserted is doubtful. State ex rel. Phillip v. Public School Retirement System, supra, 364 Mo. 395, 262 S.W.2d 569. The respondents' evidence falls short of even proving a doubtful right, in view of the facts stated above. We therefore find that the trial court reached the right results in denying a peremptory writ of mandamus.

The judgment is affirmed.

ANDERSON, J., and FRANK D. CONNETT, Jr., Special Judge, concur.

RUDDY, J., not participating.